In the Matter of HARRY M. WILLIAMS, as Attorney-in-fact of HENRY M. WILLIAMS, Respondent, against PATRICK WALSH, as Fire Commissioner of the City of New York et al., Appellants.

2

Argued June 17, 1942; decided July 29, 1942.

*William C. Chanler, Corporation Counsel (Jeremiah M. Evarts, Oscar L. Tucker* and *Abraham Shapiro* of counsel) for appellants. City fireman Williams has no rights under section 245 of the Military Law. (Cons. Laws, ch. 36). (*Stevens* v. *Village of Endicott,* 264 App. Div. 4; Op. Atty.-Gen. 1940, p. 227.) The application of section 245, as construed by the Appellate Division, results in an arbitrary and unreasonable discrimination among public employees serving in the armed forces. (*Hoyt* v. *County of Broome,* 285 N. Y. 402; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews,* 174 U. S. 96; *Smith* v. *Texas,* 233 U. S. 630; *Hartford Co.* v. *Harrison,* 301 U. S. 459; *Matter of Merchants Refrigerating Co.* v. *Taylor,* 275 N. Y. 113; *People* v. *Crane,* 214 N. Y. 154; *Matter of Keymer,* 148 N. Y. 219; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435; *Smith* v. *Texas,* 233 U. S. 630; *Matthews* v. *Matthews,* 240 N. Y. 28; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *Hovey* v. *De Long H. & E. Co.,* 211 N. Y. 420; *United States* v. *Jin Fuey Moy,* 241 U. S. 394; *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366; *Matter of Meyer,* 209 N. Y. 386.) The Fire Commissioner had the power to promulgate regulations designed to compel members of the department to be available for fire duty at all times and to prohibit members thereof from joining a military reserve organization while employed in the Fire Department. (*Matter of Smith* v. *Valentine,* 246 App. Div. 578.)

*Malcolm J. Hartsell* and *Parnell J. T. Callahan* for respondent. Fireman Williams secured the status of a member of a military reserve organization covered by the provisions of section 245 of the Military Law while an employee of the Fire Department of the City of New York. (Cons. Laws, ch. 36.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* and *John C. Crary, Jr.,* of counsel), for State of New York, *amicus curiæ.* Nothing in the history or language of the statute limits it to reserve status acquired in time of peace. (*Hoyt* v. *Broome County,* 285 N. Y. 402.)

LEHMAN, Ch. J.  Henry M. Williams, a fireman, first grade, in the Fire Department of New York City, enlisted in the United States

Marine Corps Reserve on January 26, 1942. He had filed an application for enlistment on November 27, 1941, without the knowledge or consent of his superior officers in the Fire Department. He reported for physical examination on January 14, 1942. By written notice dated January 22, 1942, he was informed officially that he was " eligible for enlistment in the Marine Corps " and that if he would present himself at the office of the Corps " with your birth certificate and release from your local draft board, we will complete your enlistment and immediate transfer to active duty." His enlistment was completed on January 26th and immediately he was " ordered to report for active service " on January 27, 1942. Since then he has been on active service with the armed forces of the United States.

At the time of the enlistment the Military Law (Cons. Laws, ch. 36, § 245, subd.1) provided:

" 1. Every officer and employee of the state or of a municipal corporation or of any other political subdivision thereof who is a member of the national guard or naval militia, or a member of the reserve corps or force in the federal military, naval or marine service, shall be entitled to absent himself from his duties or service while engaged in the performance of ordered military or naval duty, and while going to and returning from such duty. Notwithstanding the provisions of any general, special or local law or the provisions of any city charter, no such officer or employee shall be subjected by any person whatever directly or indirectly by reason of such absence to any loss or diminution of vacation or holiday privilege or be prejudiced by reason of such absence with reference to promotion or continuance in office or employment or to reappointment to office or to re-employment. During the absence of any such officer or employee, while engaged in the performance of ordered military or naval duty as a member of the national guard or naval militia, or as a member of the reserve corps or force in the federal military, naval or marine service, he shall receive his salary or compensation as such officer or employee, provided the period of such absence in any calendar year does not exceed thirty days. If the period of such absence in any calendar year exceeds thirty days he shall receive for the period of absence in excess of thirty days such part of his salary

or compensation as such officer or employee as equals the excess, if any, of such salary or compensation paid to him for the performance of such duty."

The benefits accorded by that statute constitute one of the terms of the employment of every employee of the State or of a municipal corporation. (*Hoyt* v. *County of Broome*, 285 N. Y. 402.) The petitioner, Harry M. Williams, is the father of Henry M. Williams, and, acting under a power of attorney executed by Henry M. Williams, he brought a proceeding under article 78 of the Civil Practice Act to obtain an order directing that the name of Henry M. Williams be carried upon the records of the Fire Department as "absent with leave upon Military Duty," and that his full salary be paid to Henry M. Williams or to his designee for the first thirty days of his absence upon military service and thereafter such part of his salary "as equals the excess of such salary over and above the salary he is receiving for the performance of his Military duties, so long as he shall remain in the active Military Service of the United States." The petition was dismissed at Special Term but upon appeal to the Appellate Division the order was reversed and the petition was granted.

Employees of the State or city who were members of the National Guard or Naval Militia or "of the reserve corps or force in the federal military, naval or marine service" prior to the date in December, 1941, when the United States declared war, have a right, which is no longer subject to serious challenge, to the privileges and benefits granted to them under the terms of the Military Law. (*Hoyt* v. *County of Broome, supra.*) The defendants, representing the City of New York, contend that employees who become members after that date are entitled to no such benefits. On December 15, 1941, the Fire Commissioner, with the approval of the Mayor, promulgated a special order that no application for permission to enlist in the armed forces would be granted to members of the Fire Department. Williams enlisted thereafter without such permission. For these reasons the claim made in his behalf was rejected by the city.

We are told that the special order of the Fire Commissioner was promulgated "because it was deemed essential for the defense of the City that members of the Fire Department should continue

in the department during the war between the United States and the Axis powers." We may assume that there is good reason why members of the Fire Department should continue during the war to perform the duties, for which they have received special training, in an organization which might be called upon to perform an essential defense service which it alone could efficiently perform. We assume, too, that within the limits of the powers granted by statute to the Fire Commissioner, he may promulgate orders calculated to retain such men in his department. The Military Law, by its express terms, limits the administrative powers of State or city officers, granted to them by other statutes. No order or rule may be promulgated by which the privileges and benefits granted to certain employees by section 245 of the Military Law may be denied or diminished. The serious question which arises upon this appeal is whether that section was intended to confer special privileges or benefits upon employees who became members of the reserve corps *after war was declared.*

The privileges and benefits accorded by this section are not in terms limited to those who became members of the reserve corps or force in times of peace but the court at Special Term, after a careful review of the history of the section and the amendments made from time to time by the Legislature, has concluded that:

" Both in its original passage and the subsequent amendments to subdivision 1, it is clear that the Legislature was concerned with ordered duty arising out of peacetime membership in the National Guard or naval militia, or, as subsequently provided, in duty arising out of peacetime membership in the federal reserve forces.

" To avail oneself of the benefits of that law a person must have been (1) a member of the National Guard or of the federal reserve forces concurrently with his civilian employment, and (2) must have been ordered compulsorily to absent himself from civilian duty because of such membership, not because of his volunteering for duty."

Doubtless in 1911, when the Legislature first enacted section 245 of the Military Law, protecting officers and employees of the State or of a municipal corporation in the National Guard or Naval Militia from loss of salary or employment while absent on ordered duty (L. 1911, ch. 103), the prospect that the United States might

ever be involved in a great war seemed remote and any suggestion that the United States would be involved in a war in which the entire man power of the country would be drafted for selective service would have seemed fantastic. Doubtless, too, the Legislature was concerned, primarily, " with ordered duty arising out of peacetime membership in the National Guard or naval militia, or, as subsequently provided, in duty arising out of peacetime membership in the federal reserve forces." The statute adopted by the Legislature, was nonetheless, broad enough to include " ordered service " in war time as well as in peace time if the unexpected should occur and the country become involved in war. Indeed, even now it is not disputed that the intent of the Legislature as *formulated in the statute* was to provide against loss of salary or employment through " ordered duty " in war time where an officer or employee had become a member of the reserve forces during peace time; — the city contends only that we must read into the statute by necessary implication a provision that the benefits and privileges accorded by the statute must be confined to those who were members of the National Guard or the Naval Militia or the reserve forces at the date when war was declared.

We find no sound basis for any such implication. True, enlistment in the reserve forces in war time may be equivalent to enlistment for immediately ordered active duty. When every citizen is subject to draft for selective service in the country's war effort, there may be doubt as to the soundness of a public policy which gives to a person who enters the armed service through voluntary enlistment in the reserve force a benefit or special privilege not accorded to one who enters the armed service through the selective service draft. We may assume, for the purpose of this appeal, that if the Legislature had foreseen that the time might come when this country would be engaged in a total war to preserve its freedom and the entire man power of the country would be registered and subject to call for selective service, it might not have enacted section 245. Perhaps then it might have refused to draw any distinction between employees inducted into the service under a Selective Service Law and those who entered the service through voluntary enlistment in a reserve force and might have chosen as matter of policy to grant or deny benefits to all alike. The Legislature did indeed, by chapter 255 of the Laws of 1942 (effective

April 1, 1942), amend subdivision 1 of section 245, to provide that only those public employees who are members of the National Guard or Naval Militia or of the reserve corps or force " on or before the date this subdivision as hereby amended takes effect " shall be entitled to the privileges and benefits accorded by the subdivision. Thus, those thereafter entering the military service by enlistment in the reserve force or corps enjoy no advantage over those inducted into the military service through other channels. The amendatory statute left untouched the privileges and benefits of those public employees who had been placed in a special catagory by prior membership in the reserve force or corps pursuant to the provisions of the existing statute. That statute had not restricted the special category to those who had become members before a declaration of war. The amendatory statute does not suggest any distinction between those who had joined before and those who joined after such declaration. It is difficult to find any ground upon which the court would be justified in reading into the statute a distinction or restriction which the Legislature did not express, even though perhaps the Legislature might have enacted a different statute if it had conceived the possibility that conditions analogous to those created by the present war would ever exist.

Until those new and, perhaps, unanticipated, conditions arose, the grant of special benefits and privileges was concededly valid and involved no arbitrary discrimination. There was reasonable ground for the determination by the Legislature that the State would receive adequate benefit from such a grant to all within the class defined by the Legislature. No person, within or without that class, is deprived of the equal protection of the law, even if we assume that with equal reason the Legislature might now grant the same privilege to other classes or might conclude to deny it to all. Determination of such questions is, under the Constitution, confided to the Legislature. " These considerations address themselves to the law-making power if not to the courts. Assuming that all might be included, on judicial review, a classification is not held to be bad because it is not comprehensive." (*People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405, 412.) "A class may lawfully be restricted if the lines defining the restriction are not arbitrary altogether and the rule to be applied within them is uniform and even." (*People* v. *Teuscher,* 248 N. Y. 454, 459.) The court there

was considering the validity of limitations upon freedom of action imposed by the Legislature under the police power. The same rule applies, with greater force, where there has been a grant of special benefit on reasonable grounds to a restricted class, and the conditions which might justify the extension of the limits of such class arose later. No substantial constitutional question is presented upon this appeal. The problem is solely one of statutory construction, and we may not by implication read into the statute limitations not expressed, and, so far as appears, not contemplated by the Legislature.

The order should be affirmed, with costs.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Order affirmed.